In the Matter of IRVING FEIG et al., Petitioners, against JOSEPH D. McGOLDRICK, as State Rent Administrator, et al., Respondents.

Supreme Court, Special Term, New York County, May 13, 1954

*Alexander Pfeiffer* and *Clarence S. Barasch* for petitioners.

*Robert H. Schaffer* and *Emory Gardiner* for Joseph D. McGoldrick, as State Rent Administrator, respondent.

*Arthur A. Segall* and *Robert L. Pelz* for Nathan Schulman and others, doing business as Consolidated Investing Co., respondent.

EDER, J. This is a proceeding under article 78 of the Civil Practice Act to review and annul a determination and order of the State Rent Administrator, dated December 14, 1953, increasing maximum rents of controlled housing accommodations in the apartment house building known as " The Beresford ", located at 211 Central Park West, Manhattan. Maximum rents were increased 15% in each instance above current levels, and this sum was distributed among the controlled tenants.

The landlord's application for such rent increases was filed on March 26, 1953, pursuant to the State Residential Rent Law (L. 1946, ch. 274, § 4, subd. 4, par. [a] as amd. by L. 1953, ch. 321, § 6) and subdivision 5 of section 33 of the State Rent and Eviction Regulations promulgated pursuant to such statute. On April 8, 1953, landlord filed an amended application.

Under these provisions a landlord is entitled to a net annual return of 6% from the property, and where the net annual return is a yield of less than 6% the landlord may apply to the State Rent Administrator for an order increasing the maximum rents of controlled tenants sufficient to afford such net annual return of 6% from the property.

The landlord's application for such increase was vigorously opposed. The matter came on before the local rent administrator who considered the proof, pro and con, and ultimately determined that the landlord was entitled to a 15% increase.

The proceedings before the commission, it may be noted, encompassed a period of nine months, from March 26, 1953, through December 24, 1953. The local rent administrator made an order on August 19, 1953, increasing the rents of the petitioners herein and of other tenants in the premises by a straight 15% increase of the rent being paid by said tenants.

Petitioners and other tenants filed protests and the matter then came on before the State Rent Administrator, who, after due consideration thereof, *de novo,* denied the protests in their entirety and affirmed the determination and order of the local rent administrator.

Thereupon this article 78 proceeding to review and revise the determination and order of the State Rent Administrator was instituted.

The petitioners contend that the actions and determinations made in the administrative forum below are arbitrary, capricious and unreasonable, and this general ground of complaint is based on the view that both the local rent administrator and the State Rent Administrator pursued a course in considering the granting of the application for the increase in the rents which is entirely erroneous.

A claim that an erroneous course was pursued is quite different from an assertion that it was arbitrary, capricious and unreasonable. Anyone, unbiased, reading the record in this matter, must at once acknowledge there is neither factual nor legal basis for this criticism and characterization. It is abundantly clear that the commission and its administrative officials acted conscientiously in a sincere effort to arrive at a determination, fair to all, in keeping and consistent with the purpose and intent of the statute.

Although the record and briefs are voluminous, and at times seem somewhat confusing, yet, in final perspective, the situation simmers down to one of reasonable simplicity.

Under the mentioned enactment, as implemented by subdivision 5 of section 33 of the State Rent and Eviction Regulations, an increase in maximum rent is authorized in order to afford a landlord a net annual return of 6% on the current assessed valuation of the property. The landlord is required to submit a schedule of rental income and operating costs for a test year, which, in the instant case, was the calendar year ending

December 31, 1952. The statute also provides that the indicated overall increase in rent shall be distributed with due regard to previous increases in rent affecting various apartments.

It appears that most of the tenants herein concerned filed objections to the increases and that, following established procedures, the local rent administrator, pending the hearing of these objections, submitted the landlord's application and schedules to the accounting section of the commission; that there a detailed and complete audit was made of the landlord's books of account and business records for the purpose of verifying the schedules as submitted in the application and that, because of the volume of these records, they were examined at the landlord's office during a period of several days. It appears, also, that the completed audit resulted in many substantial adjustments in the figures submitted by the landlord, the nature and scope of which is shown in item 9 of the administrator's return, i.e., Accountants' Work Summary, dated April 28, 1953. It is disclosed, too, that while the audit was being made a conference was held at the local rent office at which the parties were represented by counsel and that at this conference Mr. Pfeiffer, who represented some of the tenants, requested permission to conduct an independent audit of all the landlord's books and records. He was advised that a comprehensive audit was being conducted by said accounting section of the commission and that the request could not be given recognition in the absence of a showing by the tenants that some serious and substantial error had been made by the commission's auditors. If that was shown, then the tenants' request would be granted. So far as the record indicates, the tenants made no attempt to show that any serious or substantial error had been made in the audit.

This feature is alluded to because of the emphasis placed thereon by petitioners, who also interpose it in this proceeding as a material factor for nullifying the aforementioned determinations and orders of both the local and State Rent Administrators.

The denial of the petitioners' request to be permitted a full and detailed inspection of the landlord's books and records, under the circumstances, was a proper exercise of discretion in the absence of a showing by these tenants that the comprehensive audit conducted of these records by the commission contained serious and substantial errors. To sanction a converse policy would open the door to unbridled inquiry and to attendant and unwarranted confusion and delay (see *Stark* v. *McGoldrick*, N. Y. L. J., May 10, 1954, p. 7, col. 7).

As mentioned, the landlord's books and business records were examined and audited by the accounting section of the commission and it appears that the record disclosed that the total rental income of the property, from all sources, for the test year ending December 31, 1952, was $737,298.24; that the total operating expenses during that period were $577,311.70, and, accordingly, the net return for the test year was $159,986.54.

The assessed valuation of the property when the amended application was filed was $4,400,000. The net annual return allowed by the statute, viz., 6% of that sum is, therefore, $264,000. As the current annual net return was calculated at $159,986.54, as shown, there was an indicated deficiency of $104,013.46 and this figure of $104,013.46 is the increase in rent necessary to reach the level of return prescribed by the statute, which increase amounted to 14.11% of the total current rental income.

As the record reveals, this sum was distributed among the controlled tenants whose current rent was increased by 15% in each instance, and which allocation the commission contends was in full accord with the statutory requirement that due regard shall be given to previous increases in maximum rent.

The petitioners contend that the statute authorized the administrator to adopt a valuation lower than current assessment, to wit, $3,850,000, because the assessment for the tax year 1949–50, had been reduced to that figure by settlement of a certiorari proceeding, and that, in any event, the administrator should have fixed the value of the property at $2,700,000, which was the value stated in an application for a reduction of current assessment. This application, however, had been withdrawn " with prejudice " by the landlord prior to the determination of the administrative proceeding. The claim was made that the withdrawal was in bad faith.

The court is unable to see any merit in these contentions. As to the valuation of the property, the statute (State Residential Rent Law, § 4, subd. 41, par. [a]) provides that the current assessed valuation of the property in effect at the time of the filing of the application for an adjustment of maximum rents shall be the base for computing the prescribed 6% net annual return except in four certain specific categorical instances, not here applicable, when the administrator is authorized to adopt some other index of value. For illustration, where there is a request for a reduction in such assessed valuation currently pending; or where there has been a reduction in the assessed

valuation for the year next preceding the effective date of the current assessed valuation in effect at the time of the filing of the application.

Neither of these conditions was present here. There was no application for a reduction currently pending when this proceeding was determined. The application to reduce the assessment had been withdrawn " with prejudice ", and the administrator was, therefore, bound to accept the current assessed valuation as the absolute index of value in this proceeding.

Furthermore, there was no reduction in assessment for the tax year next preceding the effective date of the current assessed value. The current assessment was effective for the year commencing July 1, 1952. The mere filing of a request for a reduction in the assessed valuation carries no assurance that it will be granted.

The administrator, therefore, fully complied with the requirement of the statute that the current assessed value should be the sole index of value.

As to the allocation of the total increase, the petitioners contend that the administrator improperly saddled the controlled tenants with the entire increase. The administrator points out, in response, that this contention of petitioners appears to stem from a misunderstanding of how this increase was actually apportioned and proceeds to demonstrate the untenability of this claim, namely, that the statute prescribes that in apportioning the increase the administrator shall give due regard to previous adjustments in maximum rent and expenses and sets forth his position in this connection, as follows:

In complying with this mandate the Administrator allocates increases to the extent permitted by law, to establish parity among controlled tenants in the matter of percentage of increases previously experienced. The arithmetic by which this object is achieved is the following as is fully set forth in the rent allocation work sheet (item 9 of the return).

All rents in the building are stripped of any so-called "financial" increases since 1943, the rent freeze date. The rental thus disclosed for each apartment is the 1943 freeze date rent plus any increases since that time which had been ordered to reflect an increase in service, space or equipment. A fraction is then calculated by using the total of these financial increases plus the total rent increase developed in this proceeding as the enumerator; and the 1943 freeze rents plus service increases as the denominator. This fraction represents the percentage of over-all increase over freeze date rentals which would now be required in order to afford the landlord the 6% statutory return.

A similar fraction is computed, relating however, only to those units which are presently free of control. It is commonly known that rents in uncontrolled units have risen beyond 1943 levels in much greater proportion than controlled

rentals. Therefore it is important to determine the percentage of "uncontrolled rise" since parity will be established only by excluding uncontrolled rentals from any portion of the increase until controlled rentals have been increased percentage-wise to the uncontrolled level.

As appears on page 66 (last entry in volume 6) of the Rent Allocation Work Sheet, the percentage rise of uncontrolled rentals since 1943 was calculated to be 64.5%. The percentage of increase for each controlled apartment (set forth in column 6 of the Rent Allocation Work Sheets) disclosed that these increases range from a low of 6.8% to a high of 41.11%. The average increase for all controlled rentals was calculated at 39.2%.

The statute, however, limits the increase on any controlled rental to 15% per annum. Thus it was clear that if each controlled tenant's rental were increased by a full 15%, in no single instance would the total increase since 1943 reach the average level of "uncontrolled" increases. For that reason the Administrator determined that the entire increase presently indicated in this proceeding was to be allocated among controlled tenants only. It should be noted that even after this maximum increase was thus distributed the full amount of the indicated increase was not absorbed. The rental allocation reconciliation sheet (item 9 of the return) shows that $3,047.76 of the indicated over-all increase was lost because of the 15% limitation.

While petitioners challenge this as an erroneous procedure, it is the view of the court that it is not.

As to the other contentions made by petitioners, the court has given them due consideration but sees no need to discuss them in detail, and it is the court's conclusion that they are untenable.

Considering the contentions of the petitioners on this application in their entirety, the court is unable to reach a conclusion that the determination made by the State Rent Administrator was erroneous and sees no justifiable basis for any correction or revision as contended for or claimed by the petitioners.

The court is, therefore, of the opinion that the action, determination and order of the administrator, here complained of, were neither arbitrary, capricious, nor unreasonable, but proper and correct determination supported by the record and should, therefore, not to be disturbed.

The petition and proceeding are accordingly dismissed. Settle order.